Hair, Judge,
dissenliente. — From the answer of Chamblis, it is more than probable, that a fraud was practised upon Moore by Loyd, as to the age of the horse he soid him, as the agent of Chamblis. And I collect it from that part of Chamblis’ answer, which says, that he had not authorized Loyd to state that the horse was eight years old, nor did he know whether Loyd knew the age of the horse or not. The extraordinary feature of this transaction is, that he should entrust an agent with the sale of the horse, who was ignorant of his age. But the enquiry need no¡ be pursued, as this answer is not evidence against Hylton.
Hylton admits, in bis answer, that the purchase of the. horse was the consideration of the bond, which Loyd lodged with him for collection : that Chamblis afterwards came to his house, and wished to borrow three hundred dollars from him, though he does not state that he offered him the bond for that sum. Had he purchased it at that time, for that sum, and without any knowledge of any fraud committed by Loyd, the bond then not being due, the Plaintiff would have been compelled to discharge it. It appears from Hylton’s answer, that they went to the house of the Plaintiff the next day | and whether on that day Hylton became the creditor of ihe Plaintiff, by contract, made on that day and afterwards at Hylton’s house, or whether he became such merely by *437 bond from Ch,' ihfl ÍH»T, purchase ! signment o. ties. Cr.ipfi!) deduot'íín from the , , any fraud charged to Hi. Jlylton denies, that he b was alÍd against him. .iking an as-"A nní íi»*í.ísui between the par- , ■ ;uo uoswer, that tie made any * of the bond, on account of ; n committed by Loyd; and i i ■ any charge of fraud l:4,"„ci;e circumstances, it is a liitJo strange, that Hylton ¿¡tó tn,.s |'v.i--"?hase the bond before they went to the house of tb„ t-fiym*’*-', jp\, ?~r«P it appears, that when at the house oi »k> -“Ect IN-the Plaint iff, wished to borrow of Hylton ¿ • «i, ’ •; he could take in his bond for that sum, Hylton . :•<;]< in:.!, saying, he was unacquainted with his circumstances, and that if he loaned it at all, it must be to Chamblis, with vhotn he was acquainted. However, he says, upon re peated applications of the Plaintiff, he requested him to come to his house the next day, when they would consider further of the proposition ; that opon this meeting at his house the next day, he still declined loaning the money to the Plaintiff, because las circumstances were unknown to him: that the Plaintiff then insisted upon his purchasing the bond of Chamblis, and that if lie would do so, he would return the S300 in ten days, He, the Defendant Hylton, states, that, relying upon the Plaintiff’s representation, and depending upon his punctuality; he did purchase the bond of Chamblis, and took an assignment of it. He also admits, that he entered into a written contract with the Plaintiff, by which he obliged himself to deliver to the Plaintiff his bond of $400, on the payment, of S300 by the 20th of June, 1820. I think certainly, that Hylton could have purchased the bond from Chamblis for $300, without having any thing to do with the Plaintiff. And it may be asked, why did he not do this, rather than make a worse bargain with the Plain” tiff? I can answer no otherwise, than by supposing that Jlylton thought he would make a safe contract, by getting Plaintiff’s acknowledgment of the goodness of the bond | *438 an(3 that Ire woilW.still get the full amount -'f it, as the Plaintiff would not retiirn the §300 by the time stinu-talet!; and if he did,-he wolfíp then-feceiv'íQíJo injuty, 3)ecause jn that case, he would rd^Sive his prin'ctg'&and interest. Another strong reason, ^tvhy he w ished the assignment of the bond as security for his debt, was, that William Moore was a surety to the bond. It is very remarkable, that from the time that Hylton and Chamblis went to the house of the Plaintiff, until the §300 was advanced at the house of Hylton, there was no contract made, or negotiation carried on between Hylton and Chamblis. The assignment of the bond was in consequence of the bargain made by Plaintiff and Hylton.
ft may now be asked, what was the contract of the Plaintiff and Hylton, after the assignment of the bond to the latter. The contract was, that the former borrowed of the latter §300, ami by his consent, and at his request, took as a security for it the Plaintiff’s bond for §400. As that was the sum borrowed, that sum with interest ought to be paid, and an injunction ordered as to the ¡glOO.
It is said, that the Plaintiff should pay §400, because the Defendant denies all fraud, and his answer is to be taken as true. My reply is, that the bond had several months to run before it became due. Chamblis was anxious to raise money, because an execution was pressing him, at home. This he stated'to Hylton, as he admits. He, Chamblis, offered to take §300 for the bond,, This caused the Plaintiff to be solicitous to borrow the money from Hylton. I think he did borrow it, and therewith purchased the bond, which Hylton took as his security for his debt of §300. ft is true, Plaintiff told Hyl-ton, if he did not return the money in so many days, he ■would pay (or forfeit,-as I say) the amount of the band. But this, as between the Plaintiff and Hylton, was a penalty, which the latter thought would be bis gain. But being a penalty, the law will not permit him to recover it. Me ought to be contented with the money loaned, and *439 interest upon if. The $>400 was given up by Chamblis, for an advance of $>300, which Plaintiff borrowed of Hylton, and paid him in advance, before the bond became due, to relieve him from his then embarrassed situ - ation. The gain of glOO was the Plaintiff’s. I think there is enough to be collected from Hylton’s answer to come to that conclusion. Could we look into the v.holc transaction as it took place, it is more than likely k would be seen, that it was just that it should be so.
Per Curiam.
— Let the bill be dismissed with costs